# Exhibit A

# IN THE THIRD JUDICIAL DISTRICT FOR THE STATE OF TENNESSEE
## TENNESSEE CHANCERY COURT
### SITTING IN GREENVILLE, TENNESSEE

|  |  |
|---|---|
| Cambria County Employees Retirement System and Michael A. Roberts | : |
| *Plaintiffs,* | : Docket No. 2023-cv-400 |
| - against – | : |
| Forward Air Corporation, Ronald W. Allen, Ana Amicarella, Valerie A. Bonebrake, C. Robert Campbell, R. Craig Carlock, G. Michael Lynch, George S. Mayes Jr., Chitra Nayak, Javier Polit, Thomas Schmitt, and Laurie A. Tucker, | : |
| *Defendants.* | : |



"FILED COPY"
Time 2:50 pn

MAY 15 2024

*Bland Justis* OF
BLAND JUSTIS, CLERK & MASTER

## VERIFIED SECOND AMENDED CLASS ACTION COMPLAINT

Cambria County Employees Retirement System and Michael A. Roberts

("Plaintiffs"), on behalf of themselves and all other similarly situated shareholders

of Forward Corporation ("Forward Air" or the "Company") bring the following

Verified Second Amended Class Action Complaint against (i) all Defendants for consummating a merger with Omni Logistics LLC without first providing the public shareholders of Forward Air with the opportunity to vote as required under Tennessee law, and (ii) against Defendants Ronald W. Allen, Ana B. Amicarella, Valerie A. Bonebrake, C. Robert Campbell, R. Craig Carlock, G. Michael Lynch, George S. Mayes, Jr., Chitra Nayak, Javier Polit, Thomas Schmitt, and Laurie A. Tucker (the "Director Defendants") as a direct action for breach of fiduciary duty and violation of positive Tennessee corporate law because, as directors and/or officers of Forward Air, they intentionally deprived the public shareholders of Forward Air of their statutory right to vote. The allegations of this Complaint are based on the knowledge of Plaintiffs as to themselves and the investigation of counsel, including the review of publicly-available information and documents.

## NATURE AND SUMMARY OF THE ACTION

1. On August 10, 2023, Forward Air—a provider of ground transportation and freight services—announced that it was merging with one of its biggest customers, Omni Logistics LLC ("Omni"), for $3.2 billion (the "Merger"). This was a huge transaction for Forward Air, whose own market cap at the time the Merger was announced was a little under $3 billion. The merger agreement ("Merger Agreement") required Forward Air to pay for such a costly Merger primarily by issuing the equivalent of roughly 15 million shares to Omni's shareholders – a block of stock that "represents 35.0% of [Forward Air's] common stock" upon the

conversion of securities issued pursuant to the Merger, according to Forward Air's March 15, 2024 Form 10-K (the "10-K"). Despite the transformative nature of this Merger, Forward Air's board of directors (the "Board") structured the transaction specifically to deprive Forward Air's public shareholders of their right to vote on the Merger, in violation of Tennessee law.

2. On January 25, 2024, Defendants completed the Merger without ever seeking approval from Forward Air's shareholders, which approval never would have been given as demonstrated by the adverse reaction of those shareholders, and the stock market after the Merger was announced. For example, Forward Air's stock, which closed at $110 per share the day before the Merger was announced, plummeted over $32 per share (or approximately 30%) to $77.65 per share within a day of the Merger's announcement. By January 25, 2024 – the date the Merger closed – Forward Air's stock had further fallen to $46.87 per share (a nearly 60% decline). As of March 20, 2024, the Company's stock had sagged to below $27 per share (a decline of over 75%).

3. Plaintiffs bring this class action on behalf of the public shareholders of Forward Air as of the date the Merger Agreement was signed, and assert causes of action for declaratory relief, violations of Tenn. Code Ann. § 48-21-104 ("Section 48-21-104") and Tenn. Code Ann. § 48-22-102 ("Section 48-22-102"), and breach of fiduciary duty.

4. *First*, Section 48-22-102 requires shareholder approval of any transaction that would result in a transfer of all or substantially all of the assets of a corporation, subject only to two relevant exceptions set forth at Tenn. Code Ann. §48-22-101(a). Section 48-22-101(a)(1) permits a corporation to "[s]ell, … exchange, or otherwise dispose of all, or substantially all, of its property" without shareholder approval as long as that sale, exchange or disposal is "in the usual and regular course of business." Section 48-22-101(a)(3) permits a corporation to "[t]ransfer any or all of the corporation's assets to one (1) or more corporations or other entities all of the shares or interests of which are owned by the corporation." The Merger was an extraordinary transaction not in the regular course of business, and included a transfer of all of Forward Air's assets to a corporation in which, according to Forward Air's August 10, 2023 Form 8-K Report announcing the Merger, "the existing direct and certain indirect equity holders of Omni ('Omni Holders') will at the Closing hold a portion of the Common Equity Consideration and Convertible Preferred Equity Consideration in the form of Opco units that are exchangeable for [Forward Air] Common Stock and [Forward Air] Series C Preferred Units…." Thus, because no exception in Tenn. Code Ann. §48-22-101(a) applied, Section 48-22-102 required a shareholder vote by Forward Air's public shareholders before consummation of the Merger.

5. *Second*, Section 48-21-104 requires shareholder approval of any plan of merger unless all five conditions listed at subparagraph (7) are met. Under

subparagraph (7)(D), one of the conditions that will excuse a vote is that "[t]he voting power of the shares outstanding immediately after the merger or exchange, plus the voting power of the shares issuable as a result of the merger or exchange (either by the conversion of securities issued pursuant to the merger or exchange or by the exercise of rights and warrants issued pursuant to the merger or exchange), will not exceed by more than twenty percent (20%) the voting power of corporation outstanding immediately before the merger or exchange."

6.     Similarly, subparagraph (7)(E) requires shareholder approval where "[t]he number of participating shares outstanding immediately after the merger or exchange, plus the number of participating shares issuable as a result of the merger or exchange (either by the conversion of securities issued pursuant to the merger or exchange by the exercise of rights and warrants issued pursuant to the merger or exchange)" exceeds by "more than twenty percent (20%) the total number of participating shares outstanding immediately before the merger or exchange...."

7.     The 35.0% block of equity issued by Forward Air to Omni as a result of the Merger (either by the conversion of securities issued pursuant to the Merger or by the exercise of rights issued pursuant to the Merger), per the 10-K, greatly exceeds Section 48-21-104's 20% threshold. Thus, Forward Air's shareholders were entitled to vote on the Merger under Section 48-21-104 as well.

Case 2:24-cv-00103-DCLC-CRW     Document 1-1     Filed 06/14/24     Page 6 of 36
PageID #: 13

8. Because the Company consummated the Merger without a shareholder vote, Defendants are liable to Forward Air's public shareholders for depriving them of their voting franchise under Sections 48-21-104 and 48-22-102.

9. In addition to violating the foregoing statutes, Forward Air's directors breached their fiduciary duties by intentionally structuring the transaction to deprive Forward Air shareholders of the right to vote. Accordingly, Plaintiffs bring this direct action against the Director Defendants for breach of fiduciary duty.

10. For the foregoing reasons, and as detailed more fully below, this action seeks declaratory relief, rescissory and/or other damages, and such further equitable or other relief as the Court deems just and proper.

## THE PARTIES

11. Plaintiff Cambria County currently holds 585 shares of Forward Air common stock, and has held such stock since October 2020. Plaintiff Cambria County is organized under the laws of Pennsylvania.

12. Plaintiff Michael A. Roberts currently holds 5,000 shares of Forward Air common stock, and has held stock since 1993. Mr. Roberts served as Senior Vice President at Forward Air (f/k/a Landair Services) from 1982-2005. Mr. Roberts resides in Greeneville, Tennessee. On August 31, 2023, Mr. Roberts wrote directly to the Director Defendants expressing his concern over the deal, their failure to exercise their fiduciary duty, and, having worked hard for Forward Air's success, his dismay at the substantial loss of value of his shares.

13. Defendant Forward Air is a Tennessee corporation with its principal executive offices at 1915 Snapps Ferry Road, Building N, Greeneville, Tennessee, in Greene County. Forward Air is a publicly-traded company (ticker: FWRD), which lists its shares on the NASDAQ stock exchange.

14. Defendant Ronald W. Allen is, and at all relevant times was, a director serving on Forward Air's Board. Defendant Allen's total director compensation in 2022 was $211,554.

15. Defendant Ana Amicarella is, and at all relevant times was, a director serving on Forward Air's Board. Defendant Amicarella's total director compensation in 2022 was $206,179.

16. Defendant Valerie A. Bonebrake is, and at all relevant times was, a director serving on Forward Air's Board. Defendant Bonebrake's total director compensation in 2022 was $201,551.

17. Defendant C. Robert Campbell is, and at all relevant times was, a director serving on Forward Air's Board. Defendant Campbell's total director compensation in 2022 was $201,407.

18. Defendant R. Craig Carlock is, and at all relevant times was, a director serving on Forward Air's Board. Defendant Carlock's total director compensation in 2022 was $236,179.

7

19.     Defendant G. Michael Lynch is, and at all relevant times was, a director serving on Forward Air's Board.  Defendant Lynch's total director compensation in 2022 was $206,179.

20.     Defendant George S. Mayes, Jr. is, and at all relevant times was, a director serving on Forward Air's Board.  Defendant Mayes, Jr.'s total director compensation in 2022 was $196,179.

21.     Defendant Chitra Nayak is, and at all relevant times was, a director serving on Forward Air's Board.  Defendant Nayak's total director compensation in 2022 was $196,179.

22.     Defendant Javier Polit is, and at all relevant times was, a director serving on Forward Air's Board.  Defendant Polit's total director compensation in 2022 was $196,179.

23.     Defendant Laurie A. Tucker is, and at all relevant times was, a director serving on Forward Air's Board.  Defendant Tucker's total director compensation in 2022 was $206,179.

24.     Defendant Thomas Schmitt was Chairman of the Board and Forward Air's Chief Executive Officer until February 6, 2024, when his employment was terminated by Forward Air.  Defendant Schmitt's total compensation in 2022 was $6,055,810.

25.     As noted above, the defendants identified *supra* in paragraphs 14 through 24 are referred to collectively herein as the "Director Defendants."

8

26.     The Director Defendants and Forward Air are collectively referred to herein as the "Defendants."

## JURISDICTION

27.     This Court has jurisdiction over this action for equitable and other relief pursuant to Tenn. Code Ann. §§16-11-101, 16-11-102, and 16-11-103.

## FACTUAL BACKGROUND

28.     Forward Air is a Tennessee corporation in the ground transportation business. Its specialty is cargo that must be delivered at a specific time but is less time-sensitive than traditional air freight. Forward Air markets its services to air freight forwarders, integrated air cargo carriers, and airlines.

### The Merger

29.     On August 10, 2023, Forward Air announced that it had entered into a definitive Merger Agreement with Omni, a private freight-forwarding and customs brokerage company which was majority owned by private equity firms Ridgemont Equity Partners ("Ridgemont") and EVE Partners, LLC ("EVE"). Omni was a long-time customer of Forward Air.  The Merger Agreement was amended on January 22, 2024, and the transaction closed on January 25, 2024.

30.     As part of the Merger, Forward Air transferred all of its operating assets to a newly registered Delaware limited liability company, Clue Opco LLC ("Opco" or "Opco LLC") (the "Up-C Restructuring").  Forward Air now "operate[s] its business through Opco [LLC], which [] indirectly hold[s] all of the operations of

[Forward Air] and Omni." Consequently, Forward Air has been converted from an operating company to a holding company. The Up-C Restructuring was a fundamental part of the transactions contemplated under the Merger Agreement.

31. A portion of Opco LLC units are held by former Omni shareholders, including affiliates of Ridgemont and EVE, respectively. As Ridgemont disclosed in its February 5, 2024, 13D filing, "Opco is structured as an umbrella partnership C corporation through which the previous direct and certain indirect equity holders of Omni hold a portion of the consideration in the Merger in the form of Opco units designated as 'Class B Units' ('Opco Class B Units') that are exchangeable for [Forward Air] Common Stock and Series C Preferred Units … and in the form of units of Opco designated as 'Series C-2 Preferred Units' ('Opco Series C-2 Preferred Units').… The Opco Series C-2 Preferred Units have substantially the same terms as the Series C Preferred Units except, as described in more detail below, Opco Series C-2 Preferred Units automatically convert upon the Conversion Approval … into Opco Class B Units and corresponding Series B Preferred Units instead of Common Stock." Thus, Forward Air does not own 100% of Opco LLC. In all, Forward Air issued the following equity to EVE and its affiliates (collectively "EVE") in connection with the Merger, according to a January 29, 2024, Form 4 disclosure filed by Michael Hodge, a partner at EVE Partners:

Case 2:24-cv-00103-DCLC-CRW    Document 1-1    Filed 06/14/24    Page 11 of 36
PageID #: 18

- "1,331,970 Series B Preferred Units received by Omni Investor Holdings, LLC in connection with the merger of the Issuer and Omni Logistics LLC (the 'Merger')";

- "362,704 Series B Preferred Units received by EVE Omni Investor, LLC in connection with the Merger";

- "2,303,338 Opco Series C-2 Units in Opco received by Omni Investor Holdings, LLC in connection with the Merger"; and

- "(ii) 627,226 Opco Series C-2 Units received by EVE Omni Investor, LLC in connection with the Merger."

32. According to Ridgemont's February 5, 2024 Form 13D filing, "[a]s a result of the Merger," Forward Air issued the following equity to Ridgemont affiliates (collectively "Ridgemont"):

- "REP Omni LP owns 1,152,846 Opco Class B Units and a corresponding number of Series B Preferred Units," and "1,993,623 Opco Series C-2 Preferred Units";

- "REP Coinvest III-A owns 354,957 shares of Common Stock" and "613,829 Series C Preferred Units";

- "REP Coinvest III-B owns 101,745 shares of Common Stock" and "175,948 Series C Preferred Units";

- "REP FAOM owns 243,005 shares of Common Stock" and "420,229 Series C Preferred Units"; and

- "REP Affiliates owns 14,410 OpCo Class B Units and a corresponding number of Series B Preferred Units," and "24,920 Series C-2 Preferred Units."

33. In total, Forward Air issued equity in connection with the Merger that "represents 35.0% of [Forward Air's] common stock" upon the conversion of securities issued pursuant to the Merger, according to Forward Air's March 15, 2024 Form 10-K (the "10-K")

34. The "Conversion Approval" referenced in Ridgemont's 13D filing is nothing but a smokescreen created by Defendants in an effort to evade the shareholder vote mandated by Section 48-21-104. Specifically, the Series C and Series C-2 shares issued by Forward Air to EVE and Ridgemont in connection with the Merger includes an exorbitant dividend: it accrues at a rate of 3.50% above the yield payable on the most junior tranche of debt that Forward Air is obtaining in connection with the Merger, multiplied by the $110 liquidation preference attached to each unit of the Preferred Equity Consideration.

35. According to press reports, this dividend will equal 14% on the $110 per unit liquidation preference. Across the 6,159,163 shares of Series C and Series C-2 preferred shares Forward Air issued in the Merger, this amounts to a dividend of over $94 million in the first year alone. Given that Forward Air only had $18.28

million in cash and cash equivalents on its balance sheet at the time Defendants agreed to the Merger, there is no question that Forward Air's shareholders will be forced to "approve" the Conversion.[1]

*There Is Overwhelming Evidence That Forward Air's Shareholders Would Have Rejected the Merger Had They Been Given the Opportunity to Vote on It.*

36. Forward Air's shareholders and market analysts have made their views on the Merger very clear. The Merger erased nearly $2 billion of Forward Air's equity value since it was announced. Forward Air's stock price now trades below $30: some 75% below the $110 it closed at the day before Forward Air announced the Merger. And the response from analysts and large shareholders—as to both the governance concerns and the strategic and financial rationale—has been scathing.

37. As to governance, most significantly, one of Forward Air's largest shareholders called on the Board to "outright cancel the transaction." Days after Forward Air announced the Merger, ClearBridge Investments LLC—which owned approximately 3.8% of Forward Air's outstanding stock—wrote a letter to Forward Air's management and directors. ClearBridge wrote that it was "surprised and alarmed" to learn of the Merger, and described the deal as "too big and too

---

[1] Alternatively, if shareholders voted against the Conversion, the unpaid dividend of $94+ million would be added to the current $677 million liquidation preference of the Series C and C-2 preferred (bringing that total up to over $770 million, meaning the following year, the dividend payable would grow to approximately $110 million. If shareholders continued to reject Conversion, the liquidation preference and concomitant dividend would grow exponentially from there. Thus, shareholders have no real choice but to approve the Conversion.

complicated."[2] Clearbridge went on to lament that "the absence of shareholder approval with close to 40% of pro forma equity in the hands of Omni's owners was poorly conceived."[3] In ClearBridge's view, "[t]he resultant collapse of the Forward Air stock (with multiple downgrades from industry analysts expressing puzzlement over the resulting complexity) is in part reaction to this feature of the transaction."[4]

38. Similarly, in a report issued soon after Forward Air announced the Merger, Stephens candidly assessed that "the way the transaction itself is structured seems to be done in a way to keep shareholders from preventing the transaction."[5] Stephens also wrote that the "transaction is troubling from a governance

---

[2] *ClearBridge Investments Sends Letter Urging Board of Directors of Forward Air Corporation to Reconsider Announced Intention to Acquire Omni Logistics*, BUSINESSWIRE (Aug. 21, 2023), https://www.businesswire.com/news/home/20230821594277/en/ClearBridge-Investments-Sends-Letter-Urging-Board-of-Directors-of-Forward-Air-Corporation-to-Reconsider-Announced-Intention-to-Acquire-Omni-Logistics.

[3] *ClearBridge Investments Sends Letter Urging Board of Directors of Forward Air Corporation to Reconsider Announced Intention to Acquire Omni Logistics*, BUSINESSWIRE (Aug. 21, 2023), https://www.businesswire.com/news/home/20230821594277/en/ClearBridge-Investments-Sends-Letter-Urging-Board-of-Directors-of-Forward-Air-Corporation-to-Reconsider-Announced-Intention-to-Acquire-Omni-Logistics.

[4] *ClearBridge Investments Sends Letter Urging Board of Directors of Forward Air Corporation to Reconsider Announced Intention to Acquire Omni Logistics*, BUSINESSWIRE (Aug. 21, 2023), https://www.businesswire.com/news/home/20230821594277/en/ClearBridge-Investments-Sends-Letter-Urging-Board-of-Directors-of-Forward-Air-Corporation-to-Reconsider-Announced-Intention-to-Acquire-Omni-Logistics.

[5] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023).

perspective" and "raises major governance concerns," while also going on to list several flaws with the strategic and financial rationale.[6] Overall, these concerns led Stephens to declare that the risk Forward Air was assuming "is not acceptable."[7] Stephens also emphasized that Forward Air was only granting its shareholders a "*post-closing vote*"[8] – referring to the coercive Conversion Approval that Defendants improperly foisted on Forward Air's shareholders. Due to these concerns, Stephens slashed its price target for Forward Air's stock from $130 to $88.[9] That was only the tip of proverbial iceberg - the stock now trades below $30 per share.

39. Just as starkly, Susquehanna Financial Group wrote that "the board crossed the Rubicon on both leverage and governance to buy Omni."[10] Susquehanna also observed that "[r]eactions [to the Merger] have been sharply negative, with downgrades from 4 of 8 sell-side analysts and FWRD shares down 42%" since

---

[6] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023).

[7] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023).

[8] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023) (emphasis in original).

[9] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023).

[10] *Forward Air: Just a Little Nervous from The Fall*, SUSQUEHANNA FINANCIAL GROUP, LLLP (Aug. 17, 2023).

before the announcement.[11]  In Susquehanna's view, the "shareholder revolt" over the Merger was "less about strategy, and more about tactics," including Forward Air's decision to "not offer[] existing shareholders a voice or vote on the matter before the deal closes."[12]  Susquehanna also noted the obvious: that Forward Air could have publicly announced a strategic review process, or could have given shareholders some ability to influence the Company's overall direction.[13]  These criticisms led Susquehanna to likewise slash its price target from $124 to $76 per share.[14]

40.     Further, analysts repeatedly called out the risk inherent in Forward Air acquiring one of its biggest customers.  Such a merger, of course, has left Forward Air's other customers nervous about competing with Forward Air itself, and about Forward Air's ability to leverage Omni's data to their disadvantage.  One analyst noted the risk of "potential customer attrition," and specifically observed the "risk to some synergies" due to this attrition.[15]  Another highlighted the "risk of some

---

[11] *Forward Air: Just a Little Nervous from The Fall*, SUSQUEHANNA FINANCIAL GROUP, LLLP (Aug. 17, 2023).

[12] *Forward Air: Just a Little Nervous from The Fall*, SUSQUEHANNA FINANCIAL GROUP, LLLP (Aug. 17, 2023).

[13] *Forward Air: Just a Little Nervous from The Fall*, SUSQUEHANNA FINANCIAL GROUP, LLLP (Aug. 17, 2023).

[14] *Forward Air: Just a Little Nervous from The Fall*, SUSQUEHANNA FINANCIAL GROUP, LLLP (Aug. 17, 2023).

[15] *Forward Air to Combine with Omni Logistics: Advances Grow Forward but Adds Risks and Leverage*, BENCHMARK (Aug 11, 2023).

16

revenue dis-synergies initially as Omni competes with some of FWRD's other large forwarder customers."[16]

41. One industry media outlet spoke with some of Forward Air's then-existing customers, who stated that the Merger causes them significant concern because Forward Air would be able to exploit Omni's data against them, and compete directly against them on pricing. Bluntly stated, one customer stated that Forward Air is "going to gamble 90% of their customers for 10% [Omni]. Does that make sense?"[17]

42. Continuing its criticism of the Merger, Stephens also called out the estimated $150 million in annual interest payments that Forward Air is burdening itself with, and wrote that "we are unable to understand how the acquisition of Omni…was the correct strategic decision and offered both the best long-term reward at the most reasonable risk for shareholders."[18]

43. Similarly, analysts were also highly critical of the debt and resulting leverage that Forward Air assumed as a result of the Merger. Before the Merger,

---

[16] *FWRD - Bigger Isn't Always Better Right Away – Lowering Rating to Underperform*, WOLFE RESEARCH (Aug. 11, 2023).

[17] Todd Maiden, *Forward Air's latest deal spooks customers, investors*, FREIGHTWAVES.COM (Aug. 22, 2023), https://www.freightwaves.com/news/forward-airs-latest-deal-spooks-customers-investors.

[18] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023).

Forward Air's debt to EBITDA ratio was a remarkably low 0.25x,[19] and Forward Air carried a mere $119 million in long-term debt at the end of the second quarter of 2023.[20] After the Merger, however, the combined company's leverage skyrocketed to around 4.0x (excluding synergies), primarily as a result of Forward Air assuming Omni's $1.9 billion debt load.[21] Forward Air refinanced and restructured the companies' debt, including issuing $1.850 billion in senior notes on September 20, to do so. Ultimately, the Merger "adds significant debt … to a business that had very little leverage."[22]

44. The *Wall Street Journal* also commented negatively on the significant addition of debt resulting from the Merger, noting that "Omni is a heavily leveraged company, and the merger will take Forward's total debt to a ratio of four times earnings before interest, taxes, depreciation and amortization, from 1.1 times now."[23]

---

[19] *Forward Air to Combine with Omni Logistics: Advances Grow Forward but Adds Risks and Leverage*, BENCHMARK (Aug 11, 2023).

[20] Forward Air Corp., Form 10-Q (filed with the SEC on August 7, 2023) at 3, 15.

[21] *Omni Acq. Creates More Questions Than Answers, But Sub-$70 FWRD Shares Oversold*, STEPHENS (Aug. 16, 2023); *Forward Air to Combine with Omni Logistics: Advances Grow Forward but Adds Risks and Leverage*, BENCHMARK (Aug 11, 2023).

[22] *Forward Air to Combine with Omni Logistics: Advances Grow Forward but Adds Risks and Leverage*, BENCHMARK (Aug 11, 2023).

[23] Jon Sindreu, *How a Trucking Company Ran Over Its Own Stock*, WALL ST. J. (Sept. 6, 2023), https://www.wsj.com/finance/investing/how-a-trucking-company-ran-over-its-own-stock-d60c5cc5/.

45. Perhaps most damningly for Forward Air, Scott Niswonger—who founded Forward Air in 1990 and served as its CEO until 2003—resigned from the Board in protest before the Board met to vote on and approve the Merger on August 10, 2023. Niswonger resigned in part due to Forward Air depriving its shareholders of a vote.[24]

*Defendants Improperly Denied Forward Air's Shareholders Their Right to Vote on the Merger*

46. Defendants structured the Merger in a deliberate attempt to skirt the voting requirements embedded in §§ 48-22-101, 48-22-102, and 48-22-104.

47. The Up-C Restructuring was part of a single transaction, designed to complete the Merger with Omni for (1) the assumption of $1.9 billion in debt; (2) cash consideration in the amount of $20 million; and (3) equity consideration designed to provide former Omni shareholders with a 35% equity interest in the Company.

48. Two distinct statutory provisions granted Forward Air's shareholders the right to vote on the Merger here: Defendants ignored the first, and structured the Merger in a deliberate attempt to circumvent the second.

*The Up-C Transaction Violated Section 48-22-102(a) Because It Was Part Of A Unitary Transaction Designed To Transfer, Without Stockholder Approval,*

---

[24] Amy Rose, *Niswonger Resigns from Forward Air Board*, GREENEVILLE SUN (Aug. 17, 2023), https://www.greenevillesun.com/news/local_news/niswonger-resigns-from-forward-air-board/article_4b9f251a-3d17-11ee-ba47-e730af79f0b7.html.

<u>*All of Forward Air's Assets to a Subsidiary Not Wholly-owned by Forward Air*</u>

49.    Tennessee law provides that a "corporation may sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property (with or without the good will) ***otherwise than in the usual and regular course of business***, on the terms and conditions and for the consideration determined by the corporation's board of directors, if the board of directors proposes ***and its shareholders approve the proposed transaction***." Section 48-22-102(a) (emphasis added). There are two exceptions to this requirement. *First*, as reflected in this provision, shareholder approval is not required if the transaction is "in the usual and regular course of business." *Id.* Defendants have not contended and could not contend that this $3.2 billion Merger is "the usual and regular course of business" for Forward Air, or even that any specific subpart of the transactions involved in the Merger is Forward Air operating in "the usual and regular course of business."

50.    *Second*, shareholder approval is not required if the transaction involves a transfer of "any or all of the corporation's assets to one (1) or more corporations or other entities ***all of the shares or interests of which*** are owned by the corporation." Section 48-22-101(a)(3) (emphasis added).

51.    Here, pursuant to the Up-C Restructuring, Forward Air "contribute[d] all of its operating assets to Clue Opco LLC, a newly formed subsidiary of Parent

Case 2:24-cv-00103-DCLC-CRW    Document 1-1    Filed 06/14/24    Page 21 of 36
PageID #: 28

that is a Delaware limited liability company ("Opco").[25] Following the transfer, Forward Air "operate[s] its business through Opco, which ... indirectly hold[s] all of the assets and operations of [Forward Air] and Omni."[26]

52.    Critically, Opco is not owned entirely by Forward Air and its shareholders – rather, it is jointly owned by Forward Air and Omni's legacy shareholders.

53.    Because Forward Air does not own "all of the shares or interests" of Opco, Forward Air's transfer of all of its operating assets to Opco without shareholder approval violated Tenn. Code § 48-22-102(a).

*Defendants Violated Section 48-22-104 Because the Forward Air Equity and Voting Power Issued to Ridgemont and EVE in the Merger Exceeded, Without A Shareholder Vote, 20% of the Shares and Voting Power of Forward Air Outstanding Immediately Before the Merger*

54.    Tennessee law states that a share exchange does not require shareholder approval if, *inter* alia, the "voting power of the shares outstanding immediately after the merger or exchange, plus the voting power of the shares issuable as a result of the merger or exchange (either by the conversion of securities issued pursuant to the merger or exchange or by the exercise of rights and warrants issued pursuant to the merger or exchange), will not exceed by more than twenty percent (20%) the voting

---

[25]    Forward Air Corp., Form 8-K (filed with the SEC on August 14, 2023).
[26]    Forward Air Corp., Form 8-K (filed with the SEC on August 14, 2023).

21

power of the total shares of the corporation outstanding immediately before the merger or exchange." Section 48-21-104(7)(D).

55.    Section 48-21-104(7)(E) similarly provides that a shareholder vote is not required if the "number of participating shares outstanding immediately after the merger or exchange, plus the number of participating shares issuable as a result of the merger or exchange (either by the conversion of securities issued pursuant to the merger or exchange by the exercise of rights and warrants issued pursuant to the merger or exchange), will not exceed more than twenty percent (20%) the total number of participating shares outstanding immediately before the merger or exchange."

56.    Here, Forward Air acknowledges in its March 15, 2024 10-K that it issued the equivalent of 35% of its pre-Merger voting power and outstanding shares to fund the Merger.[27]

57.    By funding the Merger in this way, Defendants deliberately attempted to evade the requirements of Section 48-21-104.    Forward Air's own SEC filings make this clear.  Its Form 8-K announcing the Merger states: "The Parent Common Stock issued at Closing and prior to any Conversion Approval will represent no more than 19.99% of the fully diluted voting power of Parent as of immediately prior to

_____

[27]  In its Form 10-Q filed with the SEC on August 7, 2023, Forward reported that it had 25,695,709 shares of common stock outstanding as of August 2, 2023. 5,135,008/25,695,709 = 19.98%.

the Closing."[28]  Similarly, the Merger Agreement contains provisions designed to ensure that the amount of common stock issued does not exceed 19.99% in any circumstance.[29]

58. However, Section 48-21-104's vote requirement does not hinge solely on the voting power or amount of stock outstanding solely at closing. It expressly includes "shares issuable as a result of the merger or exchange (either by the conversion of securities issued pursuant to the merger or exchange or by the exercise of rights and warrants issued pursuant to the merger or exchange) … ." *Id.* at 7(D)

---

[28] Forward Air Corp., Form 8-K (filed with the SEC on August 14, 2023).

[29] *See* Agreement and Plan of Merger among Forward Air Corporation, Central States Logistics, Inc., Clue Opco LLC, Omni Newco, LLC and the Other Parties Hereto Dated as of August 10, 2023, Section 3.05 (filed as Exhibit 2.1 to Form 8-K, Forward Air Corp. (filed with the SEC on August 14, 2023): "Notwithstanding anything to the contrary herein, in no event shall the aggregate number of (a) shares of Parent Common Stock and (b) Parent Series B Preferred Units, in each case, constituting a portion of the Merger Consideration, exceed 19.99% of the total number of shares of Parent Common Stock (and any other securities of Parent having the right to vote generally in any election of directors of the Parent Board) outstanding immediately prior to the Blocker Mergers Effective Time (the "Stock Cap"). In the event the issuance of the Aggregate Blocked Stock Consideration (Parent Common) and the Aggregate Company Unblocked Parent Series B Preferred Stock Consideration would result in, immediately following Closing, an aggregate amount of Parent Common Stock and Parent Series B Preferred Units, in each case, constituting a portion of the Merger Consideration, that exceeds the Stock Cap, the aggregate number of Parent Common Stock and Parent Series B Preferred Units (and corresponding Opco Class B Units), in each case, constituting a portion of the Merger Consideration, shall be reduced such that the aggregate number of shares of Parent Common Stock and Parent Series B Preferred Units (and corresponding Opco Class B Units) in each case, constituting a portion of the Merger Consideration, equals but does not exceed the Stock Cap…".

23

and 7(E). And, as Forward Air itself has acknowledged, the Merger transferred 35% of the voting power, and the equity, of Forward Air to former Omni shareholders – well in excess of Section 48-21-104's 20% threshold. Thus, Defendants violated Section 48-21-104 by failing to allow Forward Air's shareholders to vote on the Merger.

*Director Defendants Breached Their Fiduciary Duties By Depriving Shareholders of Their Voting Rights*

59. The Director Defendants were obligated by their fiduciary duties to act loyally and in good faith, and to comply with the law.

60. Given the extraordinary nature of the Merger – which transformed Forward Air into a holding company – and the amount of Forward Air equity and voting power issued to Ridgemont and EVE in connection with the Merger – including through the conversion of securities issued pursuant to the Merger and/or by the exercise of rights issued pursuant to the Merger – there can be no question the Merger would ordinarily be the kind of transaction that shareholders would be entitled to vote upon. Tennessee law removes any doubt about that. But rather than giving shareholders the say they were due, the Director Defendants intentionally and manipulatively structured the Merger for the sole purpose of depriving Forward Air's shareholders of the opportunity to vote on it. The Director Defendants even went so far as to ensure that Forward Air's shareholders would be coerced into consenting to the Conversion of the Series C and C-2 Preferred by granting

Ridgemont and EVE a dividend on those shares that, in the first year alone, would require Forward Air to pay Ridgement and EVE the equivalent of was *five times* the amount of cash Forward Air had on hand at the time of the Merger Agreement, unless Forward Air shareholders approved the Conversion.

61. There is no rational justification for depriving shareholders of a vote on the Merger, and the Director Defendants' manipulative conduct in doing so was contrary to their fiduciary duties. By deliberately depriving Forward Air's shareholders of their voting franchise, the Forward Air Board acted disloyally, in bad faith, and in violation of Tennessee law, in breach of their fiduciary duties. Indeed, even if the Director Defendants had successfully structured the Merger such that a vote was not legally required under Sections 48-22-102 and -104 (which they did not do), their conduct to deliberately force the Merger on unwilling shareholders without a pre-Merger vote and with only a coerced post-Merger vote was still disloyal, inequitable, and a breach of fiduciary duty.

62. But the Director Defendants' disloyal conduct goes further. As part of the Merger, Forward Air entered into voting agreements with Omni's principal owners, Ridgemont and EVE. Pursuant to these agreements, Ridgemont and EVE (together with certain other legacy Omni shareholders) are required to vote their shares in favor of the directors nominated by the Director Defendants, and against any other nominees.

25

63.     That the Director Defendants sought to entrench themselves after forcing through a highly unpopular Merger is not surprising—particularly given their recent history with activist shareholders.  In 2021, Forward Air's founder and former CEO, Niswonger, worked with Ancora Capital to nominate new directors to Forward Air's board, seeking to change what they viewed as Forward Air's expansion into non-core business lines.[30]  Niswonger and Ancora eventually succeeded: Ancora acquired more than 5% of Forward Air's outstanding stock, and reached an agreement with Forward Air in March 2021 to appoint two directors to Forward Air's board, while endorsing three more.[31]  By locking up Ridgemont's and EVE's votes in their favor, the Director Defendants have taken a huge step towards preemptively thwarting any such shareholder activism in the future—activism that is all but assured given the Board's conduct here.

---

[30] Todd Maiden, *Investor activism alters 5 seats on Forward Air board*, FREIGHTWAVES.COM                     (Mar.                    15,                    2021), https://www.freightwaves.com/news/investor-activism-alters-5-seats-on-forward-air-board.

[31] Todd Maiden, *Investor activism alters 5 seats on Forward Air board*, FREIGHTWAVES.COM                     (Mar.                    15,                    2021), https://www.freightwaves.com/news/investor-activism-alters-5-seats-on-forward-air-board.  Since this time, Ancora sold out of its position in Forward, and Defendant Niswonger resigned from the Board the day that Forward announced the Acquisition.

64. Further, these agreements also give Ridgemont the right to appoint two directors to the board of the combined entity, and EVE the right to appoint one director.

65. These voting agreements mean that the Director Defendants have entrenched themselves against any future shareholder backlash, and explain why they approved a transaction that is so loathed by shareholders and the market, as detailed above.

## CLASS ACTION ALLEGATIONS

66. Plaintiffs bring this action individually and on behalf of all other shareholders of the Forward Air as of the time Defendants agreed to the Merger (except the defendants herein and any persons, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest), who have suffered injury arising from defendants' actions, as more fully described herein (the "Class").

67. This action is properly maintainable as a class action.

68. The Class is so numerous that joinder of all members is impracticable. The number of shares of common stock of Forward Air that were outstanding at the time Defendants agreed to the Merger was 25,695,709, according to the Company's August 7, 2023 Form 10-Q. The precise number of shareholders of Forward Air is unknown, but likely numbers in the thousands, and includes investors spread across the country.

69. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member. The questions include, inter alia, the following:

- Whether members of the Class were entitled to vote on the Merger pursuant to Section 48-21-104;

- Whether Defendants violated Section 48-21-104 by depriving Class members of their right to vote on the Merger;

- Whether members of the Class were entitled to vote on the Merger pursuant to Section 48-22-102;

- Whether Defendants violated Section 48-22-102 by depriving Class members of their right to vote on the Merger;

- Whether the Director Defendants breached their fiduciary duties to the Class;

- Whether the Class is entitled to declaratory relief;

- Whether the Class is entitled to rescissory and/or other damages; and

- Whether the Class is entitled to any additional equitable or other relief.

70. Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiffs have the same interests as the other members of the Class. Accordingly, Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

28

71.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible adjudications with respect to individual members of the Class, and which could, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or could substantially impair or impede their ability to protect their interests.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

72.     Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

73.     Plaintiffs seek a declaration that, pursuant to Tennessee law, Forward Air shareholders were entitled to vote on the Merger, and that Defendants violated Tennessee law by failing to provide shareholders with the opportunity to do so.

## SECOND CLAIM FOR RELIEF

### (Violation of Shareholder Voting Rights under Tennessee Code§ 48-21-104)

74.     Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

75.     The Merger resulted in Forward Air's issuance of shares whose voting power exceeded, by more than 20%, the voting power of the shares outstanding immediately before the closing of the Merger.  The Merger also resulted in Forward

Air's issuance of shares that exceeded, by more than 20%, the number of shares outstanding immediately before the closing of the Merger. Defendants thus violated Tennessee law by failing to provide shareholders with the opportunity to vote on the Merger, thereby injuring the Class.

76. Accordingly, Plaintiffs and the Class are entitled to the relief requested below.

**THIRD CLAIM FOR RELIEF**

**(Violation of Shareholder Voting Rights
Under Tennessee Code§ 48-22-102)**

77. Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

78. Defendants violated Tennessee law by failing to provide shareholders with the opportunity to vote in connection with the Merger, and thus injured the Class.

79. As set forth above, Tennessee law provides only limited exceptions to the general rule that a transfer or disposition of all or substantially all of a corporation's assets requires a vote by shareholders. As relevant here, a corporation need not have a shareholder vote only if (i) the transaction is in the ordinary course of business or (ii) the board decides to transfer all operating assets to a wholly-owned corporation or entity. However, these exceptions do not apply here, because the

Merger was not in the ordinary course, and Opco is not wholly owned by the Company.

80.     Accordingly, Plaintiffs and the Class are entitled to the relief requested below.

## FOURTH CLAIM FOR RELIEF

### Direct Claim for Breach Of Fiduciary Duty for Depriving Shareholders of Their Voting Rights
### (Against The Director Defendants)

81.     Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

82.     As directors of Forward Air, the Director Defendants each owe fiduciary duties of loyalty and good faith and are required to act in accordance with Tennessee law.

83.     The Director Defendants breached these fiduciary duties by depriving Forward Air's shareholders of the ability to vote on the Merger – a transaction that plainly requires shareholder approval under Tennessee law.  The Director Defendants deliberately and improperly structured the Merger in an attempt to circumvent these statutory requirements and avoid a shareholder vote, thus injuring the Class.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment against Defendants and in favor of the Class, as follows:

84. Declaring that a shareholder vote on the Merger was required under Tennessee law;

85. Declaring that Defendants wrongfully deprived the Class of their right to vote on the Merger;

86. Rescinding the Merger and/or awarding rescissory or other damages to the Class;

87. Awarding attorneys' fees and costs in favor of the Class; and

88. Ordering such further equitable or other relief as the Court deems just and proper.

COLLINS SHIPLEY, PLLC

Thomas J. Wright BPR #010695
Corey B. Shipley BPR #032772
102 South Main Street
Greeneville, Tennessee 37743

ROBBINS GELLER RUDMAN &
DOWD LLP

Christopher H. Lyons, #034853
Henry S. Bator, #040431
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
615/252-3798 (fax)
clyons@rgrdlaw.com
hbator@rgrdlaw.com

OF COUNSEL:

(*pro hac vice motion to follow*)
ROBBINS GELLER RUDMAN
  & DOWD LLP
Randall J. Baron
655 West Broadway, Suite 1900
San Diego, CA 92101
619/231-1058

GRANT & EISENHOFER P.A.
Michael J. Barry
Christine M. Mackintosh
Vivek Upadhya

32

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Verified Second Amended Class Action Complaint has been served upon all counsel by electronic mail as follows:

Benjamin Bauer <bbauer@cravath.com>,
"Justin C. Clarke" <jcclarke@cravath.com>,
Christopher Lyons <CLyons@rgrdlaw.com>,
Henry Bator <HBator@rgrdlaw.com>,
Michael Barry <mbarry@gelaw.com>,
Gary Bornstein <GBornstein@cravath.com>,
Rick Atwood <RickA@rgrdlaw.com>,
"Stephen M. Darden" <sdarden@hsdlaw.com>,
Corey Shipley <corey@collinsshipley.com>,
Vivek Upadhya <vupadhya@gelaw.com>,
David Marriott <dmarriott@cravath.com>

THIS 15TH DAY OF MAY 2024

THOMAS J. WRIGHT

## VERIFICATION

STATE OF PENNSYLVANIA    )
                                   )
COUNTY OF CAMBRIA       )

I, Edward Cernic, Jr., Retirement Board Secretary and County Controller of the Cambria County Employees Retirement System, being first duly sworn according to law, do hereby make oath and state that I have read the foregoing Verified Second Amended Class Action Complaint and that the facts contained therein are true and correct to the best of my knowledge, information and belief

_____
Ed Cernic, Jr., Retirement Board
Secretary & County Controller, Cambria
County Employees Retirement System

Sworn to and subscribed before me this ___18th___ day of April, 2024

_____
NOTARY PUBLIC

My commission expires: _____

Commonwealth of Pennsylvania - Notary Seal
Donna Jean Keller, Notary Public
Cambria County
My commission expires June 03, 2026
Commission number 1083096

# VERIFICATION

STATE OF TENNESSEE )

COUNTY OF GREENE )

I, Michael A. Roberts, being first duly sworn according to law, do hereby make oath and state that I have read the foregoing Verified Second Amended Class Action Complaint and that the facts contained therein are true and correct to the best of my knowledge, information, and belief.

_____
Michael A. Roberts

Sworn to and subscribed before me this 6th day of April, 202

_____
Notary Public

My commission expires: _____